_____

MALCOLM RUSH,

        Petitioner,

        v.                      Case No. 04-C-1154

THOMAS BORGEN,

        Respondent.

_____

## ORDER

Petitioner Malcolm Rush filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his October 18, 2002 conviction for two counts of intimidating a witness. The petitioner argues that his due process rights were violated when the trial judge failed to disqualify himself based upon the fact that another judge from the same circuit court testified for the prosecution. The petitioner also argues that the evidence was insufficient to support his conviction. For the reasons stated below, the court determines that the petitioner's right to an unbiased judge was not violated, and the petitioner procedurally defaulted insufficiency of the evidence claims. The court is also obliged to deny the petitioner's motion to amend his habeas petition.

## BACKGROUND

The Wisconsin Court of Appeals summarized the background of this case:

¶ 2 In February 2002, Rush was convicted of theft from the Jordan House Transitional Living Center of the Jordan Missionary Baptist Church, and was placed on probation and ordered to pay restitution. On April 8, 2002, while on lunch recess from his restitution hearing,

> Rush entered the elevator with two State witnesses, Denise Shaw and Reverend Donna Simmons, and began threatening them. By chance, Circuit Court Judge Jeffrey Kremers was also on the elevator, heard the threats, and assisted the witnesses in reporting Rush's threats to Milwaukee County Sheriff's Deputy Paul Harbort.
>
> ¶ 3 The State charged Rush with two counts of Intimidation of a Witness, contrary to Wis. Stat. § 940.43(3) (1999-2000). Prior to trial, Rush argued that Circuit Court Judge David Hansher should disqualify himself under Wis. Stat. § 757.19(2)(g), because, he contended, Judge Hansher could not act in an impartial manner with Judge Kremers testifying as a witness for the State. Judge Hansher disagreed, concluding that because credibility was to be evaluated by a jury, he could remain on the case.

*State of Wisconsin v. Rush*, 686 N.W.2d 455, ¶¶ 2-3 (Wis. Ct. App. Jul. 27, 2004) (footnotes omitted). At trial, Shaw testified that Rush pushed his way onto their elevator, and that he looked very upset, almost demonic. She testified that Rush shoved or pushed her shoulder back and said: "[I]t's not over. You bitches, you gonna disappear and bullets gonna fly." *Id.* ¶ 8. Reverend Simmons testified that as soon as the elevator doors closed, Rush said, "it's not over with. Um, you bitches. Bullets will fly. You can disappear. That's what guns are made for." She also stated that his threats frightened her. *Id.* ¶ 9. Judge Kremers testified that shortly after entering the elevator, he heard a man, later identified as Rush, say something to the effect of: "[']this ain't over[']" and "then something to the effect[, ']you bitches, did you hear me, this ain't over, You should disappear, that's what bullets are made for, don't come back.['] Or words to that effect." Judge Kremers stated that it was clear that Rush was not joking and that the women were upset by his threats. Judge Kremers explained that as soon as everyone exited the elevator, he assisted the women in finding "a deputy sheriff to file a report." *Id.*

¶ 10. At the conclusion of the two-day trial, the jury found Rush guilty. Rush was sentenced to four years of initial incarceration and four years of extended supervision. *Id.* ¶ 4.

In his appeal to the Wisconsin Court of Appeals, Rush argued that the evidence was insufficient to support the convictions and that "the failure of Judge Hansher to disqualify himself created an unreasonable risk that Rush would not receive a trial by a neutral and detached judge." (Answer Ex. B at 2.) With respect to disqualification, Rush's argument primarily relied upon Wisconsin Statute § 757.19(2), (Answer Ex. B at 27-33), but Rush also argued that "the due process clause of both the Wisconsin and U.S. Constitutions . . . requires a *per se* rule that fellow judges on the same bench shall not be witnesses in front of each other at criminal trials." (Answer Ex. B at 33.) Perhaps because Rush cited no federal case in support of his argument, the State and the Wisconsin Court of Appeals addressed Rush's argument only in terms of the state statute and not as alleging a constitutional violation. (Answer Ex. C at 5; *State v. Rush*, 686 N.W.2d 455, ¶¶ 14-16.) The Wisconsin Court of Appeals affirmed the judgment. In his petition for review, Rush did not raise the insufficiency of the evidence arguments to the Wisconsin Supreme Court but argued only the disqualification issue. (Answer Ex. F at 2.) The Wisconsin Supreme Court denied the petition for review.

Rush filed this habeas corpus petition in federal court, raising insufficiency of the evidence arguments as well as the disqualification issue. The issues in the petition have been fully briefed since May 24, 2005. Rush filed a motion to amend

- 3 -
Case 2:04-cv-01154-JPS    Filed 05/17/06    Page 3 of 12    Document 23

his petition on May 4, 2006. Rush seeks to add claims of ineffectiveness of counsel even though he did not raise such claims in state court. The respondent opposes the leave to amend, arguing that Rush does not explain why the issues were not included in his original petition and that Rush does not explain why justice requires that he be allowed to amend his petition at this late date.

**ANALYSIS**

The respondent correctly notes that the issues in the petition have been briefed long ago and Rush does not explain why the new issues were not included in the original petition. The court, therefore, is constrained to deny the petitioner's motion based upon the petitioner's undue delay. Moreover, the amendments would be futile because Rush does not indicate that he ever presented the new claims to any state court. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45 (1999) (stating that a habeas petitioner must fully and fairly present his federal claims to the state courts for review and resolution before he may obtain federal review).

Rush has procedurally defaulted any insufficiency of the evidence claim by not presenting the issue to the Wisconsin Supreme Court. The requirement that a petitioner fully and fairly present his federal claims to the state courts includes the requirement to present the claims to the state supreme court in a petition for discretionary review. *O'Sullivan*, 526 U.S. at 845. Rush procedurally defaulted insufficiency of the evidence claims by failing to present them to the Wisconsin Supreme Court.

This court may excuse the procedural default and reach the merits of the claim if the petitioner shows either (1) cause for the default and actual prejudice or (2) that enforcing the default would result in a fundamental miscarriage of justice. *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). In its answer, the respondent noted that Rush procedurally defaulted insufficiency of the evidence claims and failed to allege cause and prejudice or a fundamental miscarriage of justice. (Answer ¶¶ 5-6.) In his brief in support of the petition, Rush does not contest that the insufficiency of the evidence claims are procedurally defaulted. Rush does not argue that the court should excuse the default, and the court finds no basis for doing so.

The court analyzes Rush's remaining claim that he was denied his constitutional right to an unbiased judge. Although the respondent suggests that Rush may not have "fairly presented" a federal constitutional claim to the state courts, (*see* Resp't Br. 5 n.1), the respondent fails to develop this argument. The respondent argues that "one could argue" the fair-presentment issue. (*Id.*) The respondent relegates its suggestion to a footnote. (*Id.*) Finally, the respondent does not set forth or apply the various fair-presentment factors that a court must consider. *See, e.g., Harrison v. McBride*, 428 F.3d 652, 661 (7th Cir. 2005) (citations omitted) (setting for a four-factor test used to determine whether a petitioner fairly presented an issue to the state courts); *Sweeney v. Carter*, 361 F.3d 327, 332 (7th Cir. 2004) (same). Because the respondent fails to develop this argument, the court will reach the merits of the petitioner's claim. *See, e.g.,*

*United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("[P]erfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."); *Perruquet v. Briley*, 390 F.3d 505, 516 (7th Cir. 2004) ("[W]here the State has responded to one habeas claim on its merits while asserting that another is procedurally barred, it has implicitly waived any contention that the first claim is also procedurally defaulted.").

Because the state appellate court did not address the federal constitutional claim, this court does not apply a deferential standard of review to the state court decision. Ordinarily, a petitioner must show that the state court's adjudication of the claim was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court of the United States, *see* 28 U.S.C. § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 403-04 (2000), or that the decision was premised on an unreasonable determination of facts, *see* 28 U.S.C. § 2254(d)(2). This standard, however, only applies to a "claim that was adjudicated on the merits in State court proceedings." 28 U.S.C. § 2254(d); *Braun v. Powell*, 227 F.3d 908, 916 (7th Cir. 2000). When a state court is silent with respect to a petitioner's federal constitutional claim, as in this case, the claim has not been "adjudicated on the merits" under 28 U.S.C. § 2254(d). *Canaan v. McBride,* 395 F.3d 376, 382 (7th Cir. 2005). De novo review under 28 U.S.C. § 2243 is appropriate and requires this court to "dispose of the matter as law and justice require." *Id.* at 383. Even under de novo review, "[a] prisoner still must establish an entitlement to the relief he

- 6 -
Case 2:04-cv-01154-JPS   Filed 05/17/06   Page 6 of 12   Document 23

seeks." *Harrison*, 428 F.3d at 665 (quoting *Aleman v. Sternes*, 320 F.3d 687, 690 (7th Cir. 2003)).

The Due Process Clause includes the right to an impartial judge. *Harrison*, 428 F.3d at 668 ("The general principles concerning a defendant's due process right to an impartial judge are clear in the jurisprudence of the Supreme Court."). The right to an impartial judge includes "an absence of actual bias" in the trial of cases. *In re Murchison*, 349 U.S. 133, 136 (1955). The right also precludes trial by judges who have no actual bias but who face "a possible temptation . . . not to hold the balance nice, clear, and true between the State and the accused." *Id.* (quoting *Tumey v. State of Ohio*, 273 U.S. 510, 532 (1927)). However, "not every 'possible temptation' to be biased presents a sufficient possibility of bias to require disqualification." *Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1372 (7th Cir. 1994) (en banc). "At some point, a biasing influence . . . will be too remote and insubstantial to violate the constitutional constraints." *Id.* (internal quotation omitted). "[J]udges are subject to a myriad of biasing influences; judges for the most part are presumptively capable of overcoming those influences and rendering evenhanded justice; and only a strong, direct interest in the outcome of a case is sufficient to overcome that presumption of evenhandedness." *Id.* at 1373.

The court presumes the honesty and integrity of judges. *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005) ("The general presumption is that judges are honest, upright individuals and thus that they rise above biasing influences."). "Disqualification is required only when the biasing influence is strong


- 7 -
Case 2:04-cv-01154-JPS   Filed 05/17/06   Page 7 of 12   Document 23

enough to overcome that presumption, that is, when the influence is so strong that we may presume actual bias." *Del Vecchio*, 31 F.3d at 1375. "This occurs in situations . . . in which experience teaches that the possibility of actual bias is too high to be constitutionally tolerable. A court must be convinced that a particular influence, under a realistic appraisal of psychological tendencies and human weakness, poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Del Vecchio*, 31 F.3d at 1375 (internal quotations omitted). "Circumstances and relationships must be considered." *In re Murchison*, 349 U.S. at 136.

Courts have found that the biasing influence is so strong to require disqualification pursuant to the due process clause where a judge presides over a case in which he has a direct, pecuniary interest in the outcome, *see, e.g., Tumey*, 273 U.S. at 523, and where a judge has been the target of personal abuse or criticism from the party before him. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (collecting cases).

The court also notes that judicial bias is a type of structural error for which the courts do not apply a harmless error analysis. *See Edwards v. Balisok*, 520 U.S. 641, 647 (1997); *Bracy v. Schomig*, 286 F.3d 406, 414 (7th Cir. 2002) (*en banc*). Therefore, "it doesn't matter how powerful the case against the defendant was or whether the judge's bias was manifested in rulings adverse to the defendant . . . [a]nd it is irrelevant that [the defendant] was convicted by a jury for the judge's role in presiding over a jury trial is obviously not of a merely ministerial

character." *Cartalino v. Washington*, 122 F.3d 8, 9-10 (7th Cir.1997) (internal citations omitted).

Bearing these standards in mind, the court must determine whether the petitioner has shown evidence of actual bias or of a sufficient possibility of bias to require disqualification under the due process clause. See *Franklin*, 398 F.3d at 960.

In this case, Rush presents no evidence that the trial judge was actually biased against him. Rush merely argues that there is an "unreasonable risk" that the trial judge may be biased and that there is an "inherent risk of bias." (Habeas Pet. ¶ 22(A).) The court, therefore, addresses Rush's argument that there is a sufficient possibility of bias to require disqualification under the due process clause.

In this case, the possibility of bias did not require the trial judge to recuse himself, and the due process clause was not offended. Rush argues that the due process clause forbids a judge from presiding over a trial if a judge from the same court testifies for the State. Rush points to no case that announces this blanket rule. Moreover, Rush does not argue that recusal is required by any particular circumstances surrounding his trial or by the particular relationship between Judge Kremers and the trial judge.

Considering, as the court must, the "circumstances and relationships" in Rush's particular case, *In re Murchison*, 349 U.S. at 136, the trial judge faced little, if any, risk of actual bias arising from Judge Kremers' testimony. After reading the portion of the trial transcript in which Judge Kremers testified, it is clear that

Judge Kremers' involvement in the case was nothing more than "a simple matter of taking some factual testimony from a disinterested third party." *United States v. Gordon*, 354 F. Supp. 2d 524, 528 (D. Del. 2005). Judge Kremers' reputation and privacy were not at issue. Judge Kremers' testimony of Rush's statements in the elevator was consistent with the testimony of Shaw and Simmons, and at trial, Rush admitted that he made some of the statements that all three witnesses claimed to have heard. (*See* Trial Tr. vol. 1, 139, 145-46, Sept. 4, 2002.) Rush claimed that he could not recall uttering the rest of the statements, but he did not contradict the testimony of the witnesses. (*Id.*) Similarly, Judge Kremers' safety was not at issue. The record does not indicate that Rush threatened Judge Kremers or that Judge Kremers was fearful for his own safety.

Considering that Judge Kremers' testimony was duplicative and uncontested and that Judge Kremers was merely a disinterested witness, it is difficult to understand how Judge Kremers' involvement in the case created any risk of bias. Rush suggests that the trial judge imposed a longer sentence than he otherwise would have imposed because Judge Kremers was a witness in the case. (Petr.'s Br. 8.) Rush, however, does not explain why his sentence would have any connection to Judge Kremers, and the court can see none. The court has reviewed the sentencing transcript, and the trial judge did not mention Judge Kremers while imposing sentence. (*See* Answer Ex. H.) This type of inexplicable speculation does not point to a risk of bias that would overcome the presumption that judges are fair and impartial.

The court's determination that due process did not require recusal in this case is consistent with the decisions of other district courts that determined that recusal was unnecessary under recusal statutes. *See United States v. Haff*, 2001 WL 627426 (D. N.D. Jan. 24, 2001) (denying a motion for disqualification where the family member of a fellow judge may be called as a witness); *Bailey v. Broder*, 1997 WL 73717, at *3 (S.D.N.Y. Feb. 20, 1997) ("[A] judge's acquaintance with a party, an attorney, or a witness, without some factual allegation of bias or prejudice, is not sufficient to warrant recusal."); *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 1995 WL 141465, at *2 (E.D. Pa. Mar. 30, 1995) ("That a fellow judge may be a witness in a pending jury case does not reasonably indicate that the impartiality of the presiding judge may be compromised."); *cf. Gordon*, 354 F. Supp. 2d at 528 (granting a motion for recusal where a fellow judge's reputation is clearly called into question).

The record here "presents no facts indicating either actual bias, or a possible temptation so severe that we might presume an actual, substantial incentive to be biased." *Del Vecchio*, 31 F.3d at 1380.

Accordingly,

**IT IS ORDERED** that the petition for a writ of habeas corpus be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the petitioner's motion to amend the petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED** with prejudice.

The clerk is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this  17th  day of May, 2006.

BY THE COURT:

 s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Judge

- 12 -
Case 2:04-cv-01154-JPS   Filed 05/17/06   Page 12 of 12   Document 23